United States District Court
Southern District of Texas
**ENTERED**
June 15, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| YUSULF SHAHEED BENSON, TDCJ #01771885, Petitioner, VS. LORIE DAVIS, Director, Texas Department of Criminal Justice, Correctional Institutions Division, Respondent. | § § § § § § § § § § § § | CIVIL ACTION NO. 3:15-CV-301 |

## MEMORANDUM OPINION AND ORDER

State inmate Yusulf Shaheed Benson (TDCJ #01771885) has filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. The Respondent has filed a motion for summary judgment (Dkt. 14) accompanied by the relevant state-court records (Dkt. 15–Dkt. 21), to which Benson has responded (Dkt. 25). After reviewing all of the pleadings, the record, and the applicable law, the Court agrees with the Respondent and concludes that Benson's petition must be dismissed as time-barred. In the alternative, the Court will also dismiss Benson's sole claim on its merits.

### I. BACKGROUND

On Highway 288 in Brazoria County, Texas, Benson crashed his car into the back of a motorcycle driven by Charles Bundrant; Bundrant suffered severe injuries, was life-flighted to Memorial Hermann Hospital in Houston, and later died without regaining consciousness. A Brazoria County jury found Benson guilty of one count of felony

driving while intoxicated[1] and one count of intoxication assault[2] (Dkt. 15-8 at p. 10). *See* Brazoria County Criminal Case Number 65676. The jury assessed punishment at seven years for the felony DWI and five years for the intoxication assault, to run concurrently (Dkt. 15-8 at pp. 96–97; Dkt. 15-2 at pp. 70–73). The First Court of Appeals of Texas affirmed Benson's convictions. *See Benson v. State*, Nos. 01-12-00325-CR, 01-12-00326-CR, 2013 WL 655205 (Tex. App.—Houston [1st Dist.] Feb. 21, 2013, pet. ref'd). The Texas Court of Criminal Appeals ("TCCA") denied discretionary review on June 12, 2013. *See* Texas Court of Criminal Appeals Case Number PD-0471-13. Benson did not file a petition for writ of certiorari with the United States Supreme Court.

Benson then sought habeas relief in Texas state court. He filed a state habeas petition on June 16, 2014[3] in which he raised four grounds for relief (Dkt. 21-15 at pp. 13–16). The TCCA ordered additional briefing on one of those grounds: Benson's argument "that his convictions for both DWI and intoxication assault violate the prohibition against double jeopardy" (Dkt. 21-18). *See* Texas Court of Criminal Appeals Case Number WR-81,764-01. On April 15, 2015, the TCCA issued a published opinion denying Benson's state habeas petition; three justices dissented. *See Ex parte Benson*, 459 S.W.3d 67 (Tex. Crim. App. 2015). Benson filed a motion for rehearing on April 23,

---

[1] TEX. PENAL CODE §§ 49.04(a), 49.09(b)(2).
[2] TEX. PENAL CODE § 49.07(a)(1).
[3] Benson's state habeas application was deemed filed on the date on which he deposited that application into the prison mailing system. *Richards v. Thaler*, 710 F.3d 573, 578–79 (5th Cir. 2013). The Court is assuming that Benson deposited his state habeas application into the prison mailing system on the date on which he signed it—June 16, 2014 (Dkt. 21-15 at pp. 19–20). Benson's state habeas petition was actually file-stamped on June 20, 2014 (Dkt. 21-15 at p. 8). Throughout this opinion, documents filed by Benson will be deemed filed on the dates on which he signed them.

2015 (Dkt. 21-14). The TCCA denied that motion on May 20, 2015. *See* Texas Court of Criminal Appeals Case Number WR-81,764-01. On June 7, 2015, Benson filed a petition for a writ of mandamus with the TCCA in which he asked the TCCA "to finish review of the 3 other issues presented in his original [state habeas petition]" (Dkt. 21-24). The TCCA denied the mandamus petition on July 1, 2015 (Dkt. 21-23). *See* Texas Court of Criminal Appeals Case Number WR-81,764-02.

Benson filed this federal habeas petition on October 13, 2015 (Dkt. 1 at p. 10). He raises double jeopardy as his sole ground for relief (Dkt. 1 at p. 6).

## II. STANDARDS OF REVIEW

### A. Habeas Corpus

Benson's federal habeas petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *Lindh v. Murphy*, 117 S. Ct. 2059, 2068 (1997). The intent of the AEDPA is to avoid federal habeas "retrials" and "ensure that state-court convictions are given effect to the extent possible under [the] law." *Bell v. Cone*, 122 S. Ct. 1843, 1849 (2002).

The provisions of Section 2254(d) create a highly deferential standard, thereby demanding that state court decisions be given the benefit of the doubt. *Woodford v. Visciotti*, 123 S. Ct. 357, 360 (2002). A federal court cannot grant a writ of habeas corpus with respect to any claim that was adjudicated on the merits in state court unless the state court's decision:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d).

"Pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), and questions of fact are reviewed under § 2254(d)(2)." *Martin v. Cain*, 246 F.3d 471, 475–76 (5th Cir. 2001) (quotation marks omitted).

A state court decision is contrary to clearly established law if the decision contradicts the governing law set forth by the Supreme Court or if the state court decides a case differently than the Court's precedent when the facts are materially indistinguishable. *Early v. Packard*, 123 S. Ct. 362, 365 (2002). A state court unreasonably applies federal law if the court "identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 120 S. Ct. 1495, 1523 (2000). To be an unreasonable application of federal law, the state court decision must be objectively unreasonable and more than simply incorrect or erroneous. *Lockyer v. Andrade*, 123 S. Ct. 1166, 1174 (2003).

Because the AEDPA grants great deference to state determinations of factual issues, a claim adjudicated on its merits in state court and based on factual decisions will not be overturned on factual grounds unless the court determines that the decision was both incorrect and objectively unreasonable. *Williams*, 120 S. Ct. at 1522. In reviewing a federal habeas petition, the court must presume that a factual determination made by the state court is correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### B. Summary Judgment

A court may grant summary judgment when the evidence shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2552 (1986). The moving party has the responsibility of informing the court of the basis for its summary judgment motion and "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . .'" that demonstrate that there is no genuine issue of material fact. *Celotex*, 106 S. Ct. at 2553. In response, the nonmovant must go beyond the pleadings and by affidavits, depositions, answers to interrogatories, or admissions on file show that there is a genuine issue of material fact requiring resolution through a trial. *Id*. If the nonmoving party is unable to meet this burden, the motion for summary judgment will be granted. FED. R. CIV. P. 56(c).

Rule 56 of the Federal Rules of Civil Procedure "applies with equal force in the context of habeas corpus cases." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000). The rule, however, only applies to the extent that it does not conflict with the habeas rules. *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds*, *Tennard v. Dretke*, 124 S. Ct. 2562 (2004). Generally, in ruling on a motion for summary judgment, the court resolves any doubts and draws any inferences in favor of the nonmoving party—*Hunt v. Cromartie*, 119 S. Ct. 1545, 1551–52 (1999)—but 28 U.S.C. § 2254(e)(1) commands that factual findings of the state court are to be presumed correct. Thus, 28 U.S.C. § 2254(e)(1) overrides the general summary judgment rule. *Smith*, 311

F.3d at 668. The petitioner is required to rebut the presumption of correctness by clear and convincing evidence; otherwise, the court will presume the factual determination of the state court is correct. *Id.*; 28 U.S.C. § 2254(e)(1).

### III. THE ONE-YEAR STATUTE OF LIMITATIONS

This federal habeas petition is subject to the one-year limitations period found in 28 U.S.C. § 2244(d). *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998). Section 2244(d) provides as follows:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.
>
> 28 U.S.C. § 2244(d).

Essentially, subsections (B), (C), and (D) outline exceptions to the general rule, set forth in subsection (A), that a federal habeas petition must be filed within one year after the petitioner's conviction becomes final. *Flanagan*, 154 F.3d at 198. Section (d)(2) tolls limitations during the pendency of a properly filed state habeas petition. *Id.*

### A. This petition is untimely absent equitable tolling.

As noted above, Benson sought discretionary review from the TCCA, and the TCCA refused his request on June 12, 2013. When a habeas petitioner has, as Benson did, pursued relief on direct appeal through his state's highest court, his conviction becomes final ninety days after the highest court's judgment is entered, which is the expiration of time for filing a petition for writ of certiorari with the United States Supreme Court. *Butler v. Cain*, 533 F.3d 314, 317 (5th Cir. 2008). In Benson's case, that date was September 10, 2013, ninety days after the TCCA refused his petition for discretionary review. Absent tolling, the statute of limitations barred Benson's federal habeas petition on September 10, 2014.

Benson's state habeas application, which he filed on June 16, 2014, did toll limitations because he filed it before limitations ran. The period between September 10, 2013 and June 16, 2014 is 279 days. 279 subtracted from 365 is 86. That means that Benson had 86 days left in his 365-day limitations period when he filed his state habeas application. Benson's state habeas application was denied on April 15, 2015. Benson then filed a motion for rehearing on April 23, 2015, which not only tolled limitations but related back to the date on which Benson's state habeas application was denied.

*Lookingbill v. Cockrell*, 293 F.3d 256, 261–62 (5th Cir. 2002). The TCCA denied the motion for rehearing on May 20, 2015, restarting the clock.

Benson filed this habeas petition on October 13, 2015. The time between May 20, 2015 and October 13, 2015 is 146 days, considerably longer (60 days longer, to be exact) than the 86 days that Benson had left when his motion for rehearing was denied.

In his opposition to the Respondent's motion, Benson notes that he filed an "Application for Mandamus" with the TCCA; Benson believes that the application, during its pendency, entitled him to tolling under 28 U.S.C. § 2244(d)(2) (Dkt. 25 at p. 2). The mandamus petition was actually a request for a ruling from the TCCA on Benson's other three grounds for habeas relief after the TCCA issued its opinion denying relief on his double jeopardy ground (Dkt. 21-24). To be fair to Benson, the TCCA's denial of habeas relief on Benson's three non-double-jeopardy grounds is not expressly stated in the TCCA's opinion, which simply says, "We deny relief" after a lengthy discussion of the double jeopardy ground (Dkt. 21-25 at p. 35). However, an express statement that the TCCA reached the merits of a particular ground is not necessary under Texas law—when the TCCA denies habeas relief without a written order (which is essentially what it did with regard to Benson's three non-double-jeopardy grounds), that denial constitutes a denial of all the petitioner's non-procedurally-barred habeas claims on their merits. *Register v. Thaler*, 681 F.3d 623, 626 n. 8 (5th Cir. 2012); *see also Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) ("In our writ jurisprudence, a 'denial' signifies that we addressed and rejected the merits of a particular claim while a

'dismissal' means that we declined to consider the claim for reasons unrelated to the claim's merits.").

That said, Benson might well be correct about his mandamus petition tolling limitations. Since the petition requested an examination of the three grounds for habeas relief other than the double jeopardy ground, it could be construed as a "mandamus application [that] sought 'review' of the judgment pursuant to which [Benson] was incarcerated" and, consequently, as a request for "other collateral review" within the meaning of 28 U.S.C. § 2244(d)(2). *See Hutson v. Quarterman*, 508 F.3d 236, 238–39 (5th Cir. 2007) (discussing *Moore v. Cain*, 298 F.3d 361 (5th Cir. 2002)). Despite the fact that the obviously confused Benson was asking for a merits review that the TCCA had already conducted, the mere fact that he requested such a review might have tolled the federal habeas limitations period if the request could be considered "properly filed" under Texas law. *Id.* ("Our *Moore* inquiry is whether the motion *sought* review of the judgment pursuant to which he is incarcerated, not that the judgment was in fact reviewed.") (emphasis in original; footnote and quotation marks omitted). Resolving the matter would require an examination of the TCCA's jurisprudence (if there is any) regarding construction and consideration of requests for formal rulings on particular grounds after a habeas petition and a motion for reconsideration have both been denied. *See Lookingbill*, 293 F.3d at 261–62 & n. 4 ("[W]e agreed to toll the AEDPA deadline because the Court of Criminal Appeals had in fact considered motions for reconsideration.") (emphasis removed). In the end, however, the question is academic, and the Court expresses no opinion on it. The mandamus petition was filed on June 7, 2015 and denied on July 1,

2015, so at best it only buys Benson 24 more days when he needs 60. Benson needs to establish his entitlement to equitable tolling.

### B. Benson is not entitled to equitable tolling.

Benson argues that the Court should apply equitable tolling for various reasons: he has been transferred eight different times, including once to escape flooding; "[his] property has been confiscated and returned[;]" prison "property restrictions have forced [him] to send portions of his record home[;]" he did not initially have access to the proper forms and eventually had to request those forms; and the TCCA did not rule on three of his issues, thwarting his attempts at state-court exhaustion (Dkt. 25 at p. 1). A habeas petitioner is entitled to equitable tolling if he shows: (1) that he has been pursuing his rights diligently; and (2) that some extraordinary circumstance stood in his way and prevented timely filing. *Holland v. Florida*, 560 U.S. 631, 649 (2010). The determination of whether equitable tolling is appropriate is, of course, governed by rules and precedent; but it often must be made on a case-by-case basis. *Id.* at 649–50. Courts must be mindful that "tolling is only available in exceptional circumstances." *Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir. 2000) (quotation marks omitted).

The Court will not apply equitable tolling. Benson, who has the burden to establish his entitlement to tolling, provides no specific details or evidence whatsoever regarding his claims of frequent transfers, confiscation of property, property restrictions, or unavailable forms. Benson does not even provide a description of when he encountered those circumstances or how long they lasted; and they are not extraordinary enough to warrant equitable tolling on their own, without elaboration. *See Felder v.*

*Johnson*, 204 F.3d 168, 172–73 (5th Cir. 2000) (reasoning that Congress's inclusion of tolling provisions in the form of 28 U.S.C. §§ 2244(d)(1)(B), 2244(d)(1)(C), and 2244(d)(1)(D) "suggests that we should not toll unless the circumstances presented in a particular case are on a par with the conditions listed in" those sections). As for Benson's claim that the TCCA did not rule on three of his issues, Benson, as discussed above, is simply mistaken; even though the TCCA only discussed his double jeopardy ground in its opinion, it denied relief on all of his non-procedurally-barred grounds on their merits when it denied relief on his petition as a whole. *Register*, 681 F.3d at 626 n. 8. Benson's ignorance of the law regarding when his state-court remedies would have been deemed exhausted does not warrant equitable tolling. *Felder*, 204 F.3d at 172–73.

Benson has not shown that any extraordinary circumstances stood in his way and prevented timely filing of his federal habeas petition despite his diligent pursuit of his rights. He is not entitled to equitable tolling.

## IV. DOUBLE JEOPARDY

In the alternative, even if it is not time-barred, Benson's double jeopardy claim fails on its merits. The Double Jeopardy Clause of the Fifth Amendment, which is made applicable to the states by the Fourteenth Amendment, provides that no person shall be "subject for the same offence to be twice put in jeopardy of life or limb." But the Clause places "[f]ew, if any, limitations . . . on the legislative power to *define* offenses." *Sanabria v. United States*, 437 U.S. 54, 69 (1978) (emphasis added). Instead, it "serves principally as a restraint on courts and prosecutors" and generally leaves the legislative branch "free . . . to define crimes and fix punishments[.]" *Brown v. Ohio*, 432 U.S. 161,

165 (1977). As a result, when a defendant is, like Benson, subjected to multiple punishments imposed in a single trial, "the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366 (1983). In other words, legislative intent is the critical inquiry, and federal courts are bound by a state's highest court's construction of that state's statutes. *Id.* at 368. In Benson's case, the TCCA, Texas's highest court for criminal matters, specifically held in a thorough opinion that the Texas Legislature intended for "the offenses of felony DWI and intoxication assault to be different offenses for double-jeopardy purposes" (Dkt. 21-25 at p. 33). Following from that holding is the conclusion that the Texas legislature authorized cumulative punishment under the felony-DWI statute and the intoxication-assault statute (Dkt. 21-25 at p. 34).[4] "Where, as here, a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct . . . , a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial." *Id.* at 368–69. The Court sees no path to federal habeas relief for Benson via the Double Jeopardy Clause.

Moreover, the Court notes that it could not grant Benson's request for release even if his claim had merit, unless the State of Texas specifically chose to vacate his shorter

---

[4] As the TCCA put it:
Whatever else one might say, one cannot say that the legislature clearly intended only one punishment for the offenses of felony DWI and intoxication assault.
Dkt. 21-25 at p. 34.

12 / 14

sentence rather than his longer one. Benson received concurrent, rather than consecutive, sentences. Even if he could prove a double jeopardy violation, he would not be entitled to release before serving seven years. The Supreme Court has held that "where concurrent sentences are imposed, unlawful imposition of two sentences may be cured by vacating the shorter of the two sentences even where it has been completed." *Jones v. Thomas*, 491 U.S. 376, 386–87 (1989) (emphasis removed).

The Court will dismiss Benson's habeas petition.

## V. CERTIFICATE OF APPEALABILITY

The federal habeas corpus petition filed in this case is governed by the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), codified as amended at 28 U.S.C. § 2253. Therefore, a certificate of appealability is required before an appeal may proceed. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see also Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir. 1997) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability).

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Under the controlling standard, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed

further.'" *Miller-El*, 537 U.S. at 336. Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). After careful review of the pleadings and the applicable law, the Court concludes that reasonable jurists would not find its assessment and ruling debatable or wrong. Because the petitioner does not otherwise allege facts showing that his claims could be resolved in a different manner, a certificate of appealability will not issue in this case.

## VI. CONCLUSION

Based on the foregoing, the Court **ORDERS** as follows:

1. The Respondent's motion for summary judgment (Dkt. 14) is **GRANTED**. All other pending motions are **DENIED** as moot.

2. The habeas corpus petition is **DENIED**, and this case is **DISMISSED** with prejudice.

3. A certificate of appealability is **DENIED**.

The Clerk shall provide a copy of this order to the parties.

SIGNED at Galveston, Texas, on June 14, 2017.

GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE